## 55364. DOWNS v. THE STATE.

WEBB, Judge.

Upon severance of the joint indictment with his twin brother Ronald Homer Downs for the crimes of armed robbery, two counts of aggravated assault and kidnapping, Raymond Warren Downs was tried separately and convicted of all counts except the

aggravated assault in count three. From the conviction, sentence of life plus twenty years and denial of his motion for new trial, he brings this appeal.

The undisputed facts of the armed robbery of the Treasure Island store on Terrell Mill Road in Cobb County on December 22, 1975 are identical to those set forth in the report of the trial of Ronald Downs. *Downs v. State,* 145 Ga. App. 583 (1978). Additional evidence adduced upon this trial is as follows.

Steiner Moore, a friend of Raymond Downs, testified under an order of immunity. He and his wife hid Raymond for five days following the robbery. Moore testified that he had sold a gun several months before to Raymond which was similar to state's exhibit 2, a .357 magnum revolver found behind the Treasure Island store after the robbery. The serial number was not sawed off at the time it was sold, as it was when found. Raymond had contacted Mrs. Moore on Tuesday, December 23, and told her he was in trouble. He stayed at their house on Tuesday evening and Wednesday morning. Downs attempted to call several people during Tuesday evening, but was unsuccessful in finding anyone to pick him up.

On Wednesday, December 24, Steiner Moore took Raymond to his warehouse in Smyrna, where Downs stayed until the following Saturday morning. Moore and his wife prepared food and a sleeping bag for Raymond, and both noticed that he was limping. On Saturday morning, December 27, Moore went to the warehouse and brought Raymond back to his house. Raymond was at Moore's house when the police came to get Moore to take them to his warehouse, but Moore did not tell them that Raymond was there.

Moore indicated that he had discussed the Treasure Island robbery with Raymond several times, in particular about a photograph in The Marietta Daily Journal showing Ronald Downs being escorted to a police car. Raymond commented, " 'Don't believe anything that you read,' and that his brother was in the wrong place at the wrong time. . ." Raymond seemed concerned that he could be connected to the crime and told Moore that the only way a ski mask could be identified was through hair samples, and that he had a Luger which he had thrown in

Lake Lanier.

Mrs. Helen Moore was also called as a witness for the state under an order of immunity and confirmed the testimony of her husband concerning his conversations, in her presence, with Raymond. She further testified that Raymond brought up the subject of a lot of money having been at the store, and that the police had little concern for the hostages.

Lloyd Gaddis, a friend of Raymond, testified as a witness for the state under an order of transactional immunity. Raymond called Gaddis and asked him to pick him up at Steiner Moore's warehouse in Smyrna. Gaddis did, and took him to his house in Cherokee County. He gave Raymond two jackets for the cold and some pain pills for the wound in his leg. Downs told him he was in trouble and wanted a ride to Interstate 85. As they drove in that direction Gaddis noticed a marked Cobb County police car coming towards them with the siren and lights going. This car came up beside them and forced Gaddis into the ditch, and another police car came up behind and blocked him in. Raymond was "hunkered down on the front floor," trying to hide. Raymond refused to raise his hands, which were not visible, and the officer who approached the car hit him on the shoulder thinking he was armed.

Gaddis further testified that Raymond called him on Wednesday, December 24, and talked with him about the robbery for almost an hour. He told Gaddis that he and his brother Ronald went to the Treasure Island store at closing time for the purpose of robbing it; that they wore masks; that one of the two managers opened the safe and the money was placed in a shopping cart; and that he put a stack of hundred dollar bills in his coat pocket.[1] Raymond said he was "grazed" in the chest area when the police

---

[1] A navy blue jacket was found directly behind the Treasure Island store, 200 to 300 feet from the loading dock on December 26. It contained $1,005 in one pocket and $115 was lying on the ground. This money was claimed by Treasure Island. Raymond Downs testified that he smoked Marlboro cigarets, and the coat also contained a package of Marlboro cigarets.

began shooting, and that he had a nine millimeter weapon and Ronald had a .357 revolver. He thought it unusual that the police fired at them when they were holding hostages.

Raymond told Gaddis that he and Ronald were going to leave in one of the manager's cars, which was also testified to by both managers, and that when they left the store they split up in the darkness. Raymond went back to the car and got away, but Ronald went in the other direction and got caught. Raymond threw his coat away because it was too hot, forgetting in the excitement about the money. He was in the kitchen of the Moore house when the police came, and if they had come down the hall he would have shot to get out. He was shot in the leg going out the back door of the store. Gaddis gave him some pain pills but he did not take them because he did not want to slow down his reactions. He never told Gaddis he wanted to surrender.

Raymond testified in his own behalf to the general effect that he had nothing to do with the robbery; that he fled when the police came looking for him; that the injury to his left leg came from a spear gun; and that although it was a serious wound he chose not to seek medical attention even though he had the opportunity when his daughter was taken to Northside Hospital emergency room the day after he was injured.

A physician witness for the defense reached the conclusion that the injury came from a spear gun. However, on cross examination he admitted that he did not examine Raymond until some five months after the injury, had seen only a relatively few gunshot wounds, and that the emergency room doctor who examined Raymond on December 28 would have been in a much better position to evaluate the wound. Dr. Ed Malcolm, the emergency room doctor who examined Raymond on December 28, stated that the wound to the left leg had been inflicted five to six days prior to the examination (on or around December 22), and that it appeared to be a gunshot wound. Alex Wollard, a private investigator, testified that he wounded one of the robbers as they left the building.

1. It is abundantly clear from the evidence that the

trial judge did not err in refusing to direct a verdict of acquittal.

2. It is asserted that the trial court erred in forcing Lloyd Gaddis to testify upon threat of imprisonment pursuant to a void order of immunity, and in permitting the state to force him to assert his privilege against testifying in the presence of the jury. We find no merit in this contention.

When Gaddis was called as a witness for the state he refused to answer questions concerning the crime on the ground that the answers would tend to incriminate him. The state tendered an order of immunity previously signed by the court, Gaddis stated that he requested not to have immunity, and the court excused the jury. The judge informed Gaddis of Criminal Code § 26-2503 defining the crime of hindering the apprehension or punishment of a criminal, and told him that the state contended he had done that. The court then read to Gaddis from Code § 38-1715 concerning immunity, and explained to him that an order of transactional immunity had been signed and he could not be prosecuted for any crime growing out of his conduct or participation in the case against Raymond Downs. Gaddis asked to confer with a lawyer of his own choice and talked to Gene Johnson, a former president of the Cobb County Bar, who advised him that he had two choices: he could testify or he could go to jail. Based upon this advice he then testified as set forth above.

Throughout this testimony objections were made by Raymond's counsel dealing with alleged improper foundation, leading questions, allegations of calling for conclusions of the witness, motions to strike a response, objection to the form of a question based on prior testimony, hearsay and an objection that a question was redundant. No objection was made, however, to the fact that Gaddis was testifying, and a constitutional attack is raised for the first time on appeal. Even assuming that Downs has standing to request an adjudication of the issues raised in this enumeration, the matter has been waived and nothing is presented to this court for review. *Crowder v. State,* 233 Ga. 789, 790 (3) (213 SE2d 620) (1975).

3. Nor did the trial court err in refusing to allow

defense counsel to cross examine Detective John Seay concerning the nature of the grant of immunity. Detective Seay was present during the arrest of Raymond Downs on December 28 and his testimony dealt with the circumstances surrounding that arrest. On cross examination defense counsel attempted to ask Detective Seay what his conclusions were as to the believability of witnesses given immunity. Upon objection the jury was excused and counsel stated to the court that the jury was entitled to know "the pitfalls of immunity," and that he wanted Seay to express his opinion based on his experience with the witness Debbie Kidd in the Matthews murder cases. (See in this connection *Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972); Emmett v. Ricketts, 397 FSupp. 1025 (N.D. Ga. 1975)). Specifically he wanted to question Seay as to Debbie Kidd's believability based on his post-conviction investigations. The trial judge found that the proffer of evidence was not relevant to any issue in the case, and we agree. Code § 38-201. "Questions of relevancy of evidence, which includes the issue of materiality, are for the court, and in the absence of an abuse of judicial discretion, this court will not interfere. *Garner v. State,* 83 Ga. App. 178, 184 (63 SE2d 225)." *MacNerland v. Johnson,* 137 Ga. App. 541, 542 (1) (224 SE2d 431) (1976).

4. The trial court did not err in failing to grant a new trial on the ground of alleged juror misconduct. The defense presented an affidavit of Norman Collins, a juror, alleging that after the jury retired another juror, Virgil Daniel, stated that Raymond Downs had a criminal record "as long as your arm." Collins indicated that the statement had no effect on him, but it was his opinion that it greatly impressed Daniel. However, Daniel swore that Collins' statement was untrue and that no juror, at any time, discussed any alleged criminal conviction of Raymond Downs, that the subject of a prior criminal record was not discussed at any time by any juror, and that the sole basis for his decision as an individual juror was based upon the evidence presented in court and the charge by the judge as to the law in the case. Clearly Collins' affidavit has to be considered as tending to impeach his verdict, which is not permissible under

Georgia law. Code § 110-109; *Wisdom v. State,* 234 Ga. 650, 658 (217 SE2d 244) (1975).

5. Contentions as to the overruling of his Brady motion were determined adversely to Raymond in Division 1 of the appeal of his brother, *Downs v. State,* supra.

*Judgment affirmed. Quillian, P. J., and McMurray, J., concur.*

Submitted February 7, 1978 — Decided April 5, 1978.

*Dupree & Staples, Hylton B. Dupree, Jr., David S. Marotte,* for appellant.

*Thomas J. Charron, District Attorney, Adele Grubbs, Assistant District Attorney, Richard L. Moore, Special Assistant District Attorney,* for appellee.

