## 66063. ARNOLD v. THE STATE.

DEEN, Presiding Judge.

Wayne Arnold here appeals from his convictions of rape, kidnapping, and armed robbery, for which he received prison sentences of 20 years, 10 years, and 20 years, respectively.

1. Appellant contends that the trial court should have granted his extraordinary motion for new trial because of alleged juror misconduct discovered by counsel for appellant subsequent to the trial. It appears that at some point in the proceeding one juror remarked to a second juror that she recognized appellant as a purse-snatcher from an incident that had occurred about one and one-half years earlier. Counsel for appellant submitted his personal affidavit along with that of the second juror as proof that the first juror had recognized the appellant by the time he took the stand at trial, and that this juror had made the remark some time before the jury actually voted on the verdict. At the evidentiary hearing on the matter, the first juror testified that some time after the trial began she had thought she recognized the appellant but she had not been sure until she viewed the photographic exhibits when the jury retired for deliberation; she claimed not to have remarked about the matter until the jury had voted.

OCGA § 17-9-41 (Code Ann. § 110-109) provides that "the affidavits of jurors may be taken to sustain but not to impeach their verdict." Further, the verdict may not be impeached by the affidavit of a third person establishing the utterance by a juror of remarks which may impeach his verdict. *Rylee v. State,* 28 Ga. App. 230 (110 SE 749) (1922). Appellant sought to impeach the verdict in precisely this manner which, under similar circumstances, has repeatedly been disallowed by both this court and the Supreme Court. See *Emmett v. State,* 243 Ga. 550 (255 SE2d 23) (1979); *Williams v. State,* 206 Ga. 757 (58 SE2d 840) (1950); *Downs v. State,* 145 Ga. App. 588 (244 SE2d 113) (1978). The trial court thus properly denied appellant's motion for new trial based on this ground.

2. Appellant also asserts that the trial court erred in excluding from the evidence an excerpt of the victim's written statement given to the police and a hospital report, both of which contained the victim's description of her assailant, and the affidavit of a defense witness. We find no error in the exclusion of these documents.

The assailant's description provided by the victim in the police report was that of a "black male, heavy build, about 5'6", dark complexion, and he was wearing a dark hat and a dark jacket." During the trial, the victim testified that her assailant had been "about five feet six, heavy-built in the chest, dark, and he was wearing a dark cap

and jacket." These descriptions obviously are identical, and the trial court correctly rejected appellant's contention that the excerpted statement was admissible for purposes of impeachment. We are unable to see how appellant could have been harmed by the omission of this written statement in any event, since the victim as well as the investigating police officer testified extensively about the description given in the report.

Concerning the hospital report containing the victim's statement regarding the incident, OCGA § 24-3-4 (Code Ann. § 38-315) provides that "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence." Contrary to appellant's assertion, we do not believe that the physical description of the victim's assailant was reasonably pertinent to the diagnosis and treatment of the victim. The exclusion of the report was proper. See generally *Lewis v. State,* 161 Ga. App. 209 (288 SE2d 278) (1982); *Johnson v. State,* 149 Ga. App. 544 (254 SE2d 757) (1979).

Counsel for appellant also sought to impeach the defense witness by tendering an affidavit of that witness which supposedly contradicted his testimony at trial. In the affidavit the witness averred that on March 2, 1982, at approximately 12:30 a.m. or later, appellant had stopped by the apartment at which the witness was visiting; at trial, the witness stated that he could not remember the exact time of appellant's visit, but that it had been around midnight or later.

"A party may not impeach a witness voluntarily called by him except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement." OCGA § 24-9-81 (Code Ann. § 38-1801). The Supreme Court has recently removed the requirement of showing surprise, ruling that "[i]f, at the time of the questioning, a party has knowledge of a prior statement by one of his witnesses which contradicts testimony that witness has just given, that party has been sufficiently entrapped so that he may impeach his witness by use of the prior inconsistent statement." *Davis v. State,* 249 Ga. 309, 314 (290 SE2d 273) (1982). However, when such impeachment is allowed, the prior inconsistent statement is admitted in evidence for impeachment purposes only and not to prove the truth of the prior statement. *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975).

Under the circumstances of this case, the thirty-minute discrepancy in the affidavit and the trial testimony of the defense

witness was not so insignificant as to render the two statements consistent, and we agree with appellant that the prior inconsistent statement was admissible for impeachment purposes. Notwithstanding the exclusion of the written statement, it is clear that counsel for appellant was allowed to impeach the witness by a thorough cross-examination regarding the contents and surrounding circumstances of the prior statement. The inconsistent statement of the witness thus actually was appropriately presented to the jury, and there was no harm in withholding from the jury the actual, written affidavit. See *Wisdom v. State,* 234 Ga. 650 (217 SE2d 244) (1975).

3. Appellant further enumerates as error the admission into evidence of several "mug shots," one of which was of the appellant, that had been used in the photographic line-up. It has consistently been held, however, that admission into evidence of a defendant's "mug shot" does not inject his character into evidence. *Stanley v. State,* 250 Ga. 3 (295 SE2d 315) (1982); *Creamer v. State,* 229 Ga. 704 (194 SE2d 73) (1972); *Ambros v. State,* 159 Ga. App. 492 (283 SE2d 706) (1981).

4. Appellant next contends that the trial court erred in admitting testimony of the victim's identification of the appellant at the photographic line-up and the in-person line-up, as well as the in-court identification, on the grounds that the entire identification process had been impermissibly suggestive and involved a substantial likelihood of irreparable misidentification. Around 4:30 to 5:00 a.m. on March 2, 1982, only a few hours after the victim's rape, Detective Barnes of the Atlanta Police Department conducted a photographic line-up using 7 photographs matching the general description of the assailant given by the victim, which he had selected from over 200 photographs maintained in the police department's I. D. Section. He and the victim were alone in a hospital room at the time, and he handed the victim the photographs in a stack, with the appellant's photograph in the middle of the stack. The victim then immediately and positively identified appellant's photograph as that of her assailant.

Appellant voluntarily surrendered to the police on April 15, 1982, and on April 20, 1982, the in-person line-up was conducted. Appellant and 5 other men, who generally matched the appellant's description, were displayed; appellant was allowed to select his position in the line-up. The victim again positively identified the appellant, although she noted that he had more facial hair than at the time of the incident over six weeks earlier. Counsel for appellant was present at the line-up.

A pre-trial identification procedure may be so tainted as to require exclusion of an in-court identification, if, under all the

circumstances, the procedure was both impermissibly suggestive and it resulted in a substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968); Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Thornton v. State,* 238 Ga. 160 (231 SE2d 729) (1977). If it is not shown that the procedure was impermissibly suggestive, it is not necessary to determine whether there was a substantial likelihood of misidentification. *Payne v. State,* 233 Ga. 294 (210 SE2d 775) (1974); *Ambros v. State,* supra. We find that the circumstances of neither the photographic nor the in-person line-ups were suggestive, and thus the identification evidence properly went before the jury.

5. Appellant also asserts that five photographs, three of which were of the specific crime scene, were improperly admitted into evidence because they were inaccurate depictions of the conditions and lighting at the scene of the crime. The photographs necessarily were taken with a flash attachment since it was nighttime, and appellant maintains this subjected him to the risk of the jury believing the area was sufficiently lighted to allow a reliable identification of the assailant by the victim. This enumeration is without merit.

"Relevant photographs are admissible to describe a person, place or thing, for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case." *Floyd v. State,* 233 Ga. 280, 283 (210 SE2d 810) (1974). Obviously, photographs of the area in which the crime occurred, taken upon the arrival of the police, were admissible for the above purpose. Even where there is some difference in the situation portrayed and that which existed, admissibility of photographs is within the discretion of the trial court. *Roberts v. State,* 149 Ga. App. 667 (255 SE2d 126) (1979). The fact that artificial lighting was utilized when the photographs were taken, a fact clearly pointed out to the jury, did not render the photographs inaccurate and unfair representations of the crime scene, and the trial court properly admitted them. See *Mills v. State,* 140 Ga. App. 192 (230 SE2d 317) (1976); *Roberts v. State,* supra.

6. Appellant asserts the general grounds that the verdicts were against the weight of the evidence. His argument emphasizes the alibi evidence submitted and the difference between his actual physical appearance and the victim's description of her assailant. From the various accounts of the many witnesses at trial, however, there was sufficient evidence to contradict the alibi testimony. The credibility of identifying witnesses, of course, is a question for jury resolution, *Redd v. State,* 154 Ga. App. 373 (268 SE2d 423) (1980), and the inaccuracy of the victim's description of her assailant was countered

by the victim's positive identifications of appellant. Considering the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the appellant guilty of rape, kidnapping, and armed robbery beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980).

7. Appellant further contends that the trial court should have restricted the use of the word "rape" throughout the trial, relying upon *Marks v. State,* 237 Ga. 277 (227 SE2d 334) (1976). Reference to an incident as rape states a conclusion usually to be determined by the jury. Unrestricted use of the word may be objectionable, absent some jury instruction that the question of whether or not any rape occurred was for its determination, where the crucial matter sought to be proved is the occurrence of a rape. *Marks v. State,* supra. In the instant case, however, appellant did not really dispute the fact that the victim had been raped; rather, the crucial matter to be proved was whether the appellant was the assailant. Given the circumstance, we can see no error or prejudice to appellant in the use of the word "rape" during the trial.

8. Appellant requested this court to review the district attorney's file, which was sealed and transmitted with the appeal record, to determine if the trial court ordered the production to appellant of all favorable and exculpatory material pursuant to his motion under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). We have accordingly reviewed that file, and we found no exculpatory material other than that already released to the appellant.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED APRIL 18, 1983 —

*John A. Pickens,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Chris Jensen, Assistant District Attorneys,* for appellee.