## A91A1312. CANTRELL v. THE STATE.
(410 SE2d 193)

BEASLEY, Judge.

Following the denial of his motion for new trial, Cantrell appeals his conviction for burglary, OCGA § 16-7-1 (a).

1. Appellant contends that the trial court erred in denying a mistrial on the grounds that a police officer impermissibly placed appellant's character into evidence by first testifying that he had previous dealings with appellant and then by repeatedly referring to appellant as the person who "committed the crime."

The objected-to comments were made during the examination of the investigating officer. The first occurred during the State's questioning of the officer about the cause of the officer's original suspicion that appellant was the perpetrator of the burglary.

The officer stated that the victim related that even though she confronted the intruder and threw things at him, the intruder did not run but merely walked to the door. The officer thought it odd that the intruder walked rather than ran. The officer listened to the victim's description of the intruder to the police composite technician, had met with appellant at other times, and knew that appellant had a physical handicap that would have prevented appellant from running.

The officer related that he had made a mental note to discuss his suspicion with another investigating officer and to tell him to check into both appellant and his brother. The officer added, "I've had dealings with their family in Buford before." The State concluded direct

examination and the court asked if there was to be any cross-examination. Defense counsel stated that she had a matter to pursue outside the jury's presence. The jury was removed.

Defense counsel moved for a mistrial on the basis that the officer had placed appellant's character into evidence by testifying about previous encounters with appellant. The State asked for any curative instructions that the court deemed appropriate. The court questioned the officer about whether by his testimony he meant that he had arrested appellant prior to the subject burglary. The officer responded that he had not previously investigated or arrested appellant, but he had previous problems with appellant's brothers. The court stated it would instruct the jury that the officer's testimony did not mean the officer had ever arrested appellant before or that appellant had any prior problems with the police, and then the court would query the jury as to whether or not it could disregard the officer's testimony. If the jury could disregard it, a mistrial would be denied; if not, a mistrial would be granted.

The jury returned, was instructed accordingly, and was questioned as to its ability to disregard the testimony. No juror indicated a problem in disregarding it, and cross-examination proceeded.

Well into the cross-examination, the officer testified about the victim's description of the intruder stating, "I don't know if the Defendant had longer hair at the time he committed the crime or if he had a mustache when he committed the crime." Defense counsel moved to strike the testimony on the basis that the officer was referring to appellant as having committed the crime. The court sustained the objection and instructed the witness to use the term "perpetrator," following which the cross-examination continued. No motion for mistrial was made.

After the conclusion of the officer's cross-examination, the officer's redirect examination, and testimony from two other State's witnesses, court recessed for the day. At this time, defense counsel noted her exception to the court's ruling on the motion for mistrial. The following morning, defense counsel sought to renew her motion for a mistrial, repeating as a ground the officer's comment about prior dealings with appellant's family and adding as a new ground the reference to appellant as committing the crime.

As to the latter, appellant failed to move for a mistrial at the time the officer made the "committing the crime" comments. "A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it. *Peoples v. State*, 184 Ga. App. 439 (361 SE2d 848) (1987)." *Thaxton v. State*, 260 Ga. 141, 143 (5) (390 SE2d 841) (1990); *Thomas v. State*, 256 Ga. 616, 617 (4) (351 SE2d 453) (1987). Therefore, appellant waived the opportunity to demand a mistrial in

regard to the latter comments.

Even if it had been timely made and denied, counsel would have had to renew the motion for mistrial following the court's curative instruction. See *Loaiza v. State*, 186 Ga. App. 72, 73 (2) (366 SE2d 404) (1988). See also *Marlow v. State*, 192 Ga. App. 670 (2) (385 SE2d 759) (1989).

With respect to the "prior dealings" ground, the failure to renew the motion waived it, applying the above-stated principles. In light of the court's curative instructions and the apparent ability of the jury to disregard the officer's comment, there was no abuse of discretion in refusing to grant a mistrial on this basis. See *Simon v. State*, 182 Ga. App. 210, 211 (2) (355 SE2d 120) (1987) (fully concurred in as to Division 2); *Simpson v. State*, 181 Ga. App. 558 (2) (353 SE2d 55) (1987).

2. Appellant contends that the trial court erred in denying his motion to suppress evidence concerning his identification by the victim in a photographic lineup, the identification procedure being highly suggestive and inherently defective in that it was based on the investigating officer's preconceived opinion as to the perpetrator's identity.

"A pre-trial identification procedure may be so tainted as to require exclusion of an in-court identification, if under all the circumstances, the procedure was both impermissibly suggestive and it resulted in a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968); *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Thornton v. State*, 238 Ga. 160 (231 SE2d 729) (1977)." *Arnold v. State*, 166 Ga. App. 313, 315 (4), 316 (304 SE2d 118) (1983). Neither factor is present in this case.

The evidence at the suppression hearing showed the following. The perpetrator broke into the victim's house during the early morning hours and used a flashlight which backlighted his activity. There were various night lights on in the house. The victim was in bed and heard the burglar enter the front door, walk through the house and go through drawers. As the intruder went from the living room to the hall, the victim saw his left side. When the intruder exited the bathroom, the victim saw his right side. As the man stood at the children's bedroom door shining his flashlight around the bedroom, the victim again saw his entire right side. The victim came out of her bed throwing things. The intruder was only three or four feet away. The victim followed the man to the living room and to the front door. The man turned and looked at the victim. For the ten or fifteen seconds the man paused at the door, the victim got a full frontal view of him.

The officer responded to the burglary call and was present during the victim's description of the perpetrator to the police identification

technician. The officer perceived that the victim was having some difficulty conveying her mental picture of the type of forehead to the technician because nothing in the technician's identification kit showed the particular feature. The officer remembered a photograph on the police bulletin board of a man with such a forehead. The photograph was not of appellant.

The officer retrieved it from the precinct and showed it to the victim and the technician. The victim believed that the man in the photograph had a similar type of forehead to what she was attempting to describe. The technician adjusted the composite accordingly. There was no evidence that by obtaining the photograph the officer attempted to show the victim a likeness of appellant.

Suspecting that the related description and the victim's account of the intruder's failure to run when confronted pointed to appellant, the investigating officer told a fellow officer of his suspicion. He never related his suspicion to the victim. Three days after the burglary, the second officer went to the victim's house and showed her six photographs simultaneously. Within three minutes, the victim selected appellant's photograph as that of the perpetrator.

Appellant has not demonstrated anything impermissibly suggestive about the substance or the procedure of the photographic lineup, nor has appellant shown that the police made any improper suggestion concerning appellant to the victim prior to the lineup. Furthermore, the victim had ample opportunity to view the intruder during the commission of the crime so as to make misidentification unlikely.

The trial court correctly denied suppression of the victim's identification of appellant.

*Judgment affirmed. Banke, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 3, 1991.

*Leslie J. Cardin*, for appellant.

*Thomas C. Lawler III, District Attorney, R. Keith Miles, Debra K. Turner, Assistant District Attorneys*, for appellee.